IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MITCHELL R. SWARTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-482 (LMB/TCB) |
| | ) |
| JOSEPH MATAL, Performing the Functions and | ) |
| Duties of the Under Secretary of Commerce | ) |
| for Intellectual Property and Director of the | ) |
| United States Patent and Trademark Office, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Before the Court is defendant Joseph Matal's Motion to Dismiss [Dkt. Nos. 15 and 16], which has been fully briefed. For the reasons that follow, defendant's motion will be granted.

I. BACKGROUND

Plaintiff Mitchell Swartz ("plaintiff" or "Swartz"), proceeding pro se, is a medical doctor, electrical engineer, and inventor who holds several patents both in the United States and abroad. Compl. [Dkt. No. 1] ¶¶ 7, 9. At issue in this civil action are six patent applications—U.S. Patent Serial Nos. 12/932,058 ("the '058 application"), 12/589,258 ("the '258 application"), 13/544,381 ("the '381 application"), 12/316,643 ("the '643 application"), 09/748,691 ("the '691 application"), and 09/750,765 ("the '765 application")— all of which plaintiff describes as relating to inventions that allegedly generate heat and electricity quietly and efficiently. Compl. [Dkt. No. 1] ¶¶ 10, 18.

Each application went through the internal two-stage review process at the United States Patent and Trademark Office ("USPTO"). At the first stage, each application was assigned to a patent examiner, who reviewed its claims to determine patentability. See 35 U.S.C. § 131. For

each application, the examiner determined on both an initial review and after reconsideration that the claims failed to meet the legal requirements for patentability. Cf. id. § 132. After the examiner twice rejected each application, plaintiff filed appeals with the Patent Trial and Appeal Board ("PTAB" or "Board"), an administrative appellate tribunal inside the USPTO. See id. § 134(a). The PTAB affirmed the rejection of five of his applications; however, the appeal of the sixth, the '381 application, is still pending.[1] See Mem. in Supp. of Mot. to Dismiss ("Def. Mem.") [Dkt. No. 18] 6. Dissatisfied with the decisions of the PTAB, plaintiff has exercised his right under 35 U.S.C. § 145 to bring the present civil action against the Director of the USPTO, in which he requests in Count 1 that the Court find that he is entitled to a patent on each application. See Compl. [Dkt. No. 1] ¶¶ 315-19. Plaintiff also alleges that the USPTO and its officers have engaged in a variety of misconduct while evaluating his applications. The Complaint includes thirteen additional counts based on these allegations: two counts alleging violations of constitutional rights, one negligence-based tort count, one access-to-records count, eight counts alleging violations of various criminal laws, and one count alleging civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). See id. ¶¶ 320-60.

Defendant has moved to dismiss each of the fourteen counts for a variety of substantive and procedural reasons, see Def. Mem. [Dkt. No. 18], plaintiff has responded, see Mem. in Opp'n to Mot. to Dismiss ("Pl. Opp.") [Dkt. No. 25], and defendant has replied, see Reply in Supp. of Mot. to Dismiss ("Reply") [Dkt. No. 29]. Finding that the briefs are comprehensive and

---

[1] Paragraphs 19 through 277 of plaintiff's 120-page Complaint relate the substance of each of the six relevant patent applications as well as plaintiff's interactions with the USPTO with respect to each application. Because many of the facts alleged are immaterial to the present Motion to Dismiss, the Court will discuss only the relevant details rather than the entire factual background as related in the Complaint.

that oral argument would not aid the decisional process, the Court will resolve defendant's motion on the materials submitted.

## II. DISCUSSION

Defendant bases his Motion to Dismiss on Fed. R. Civ. P. 12(b)(1) and 12(b)(6). First, he argues that Count 1 should be dismissed under Rule 12(b)(6) for failure to state a claim because plaintiff does not plausibly allege entitlement to a patent for his various applications, all of which relate to "cold fusion," a "hypothetical technology that has not been shown to be technically feasible."[2] Def. Mem. [Dkt. No. 18] 1, 14-22. Second, he argues that under Rule 12(b)(1), the Court lacks subject matter jurisdiction to consider some of the patent claims and all of the non-patent claims for a variety of reasons, including sovereign immunity, collateral estoppel, failure to administratively exhaust, and failure to establish a private right of action. See id. at 8-13, 22-28.

### A. **Standard of Review**

Under Rule 12(b)(1), a civil action must be dismissed whenever the court lacks subject matter jurisdiction. Although the plaintiff has the burden of establishing subject matter jurisdiction, Demetres v. East West Const., Inc., 776 F.3d 271, 272 (4th Cir. 2015), a court should accept "as true the jurisdictionally significant facts claimed by the" plaintiff, Motley v. Va. State Bar, 403 F. Supp. 2d 468, 471 (E.D. Va. 2005). After accepting those facts as true, the

---

[2] As defendant explains, "[c]old fusion is generally understood to refer to a nuclear reaction that occurs at, or near, room temperature and generates excess heat and transmutation products when hydrogen is introduced to a small piece of nickel or palladium." Def. Mem. [Dkt. No. 18] 5 (quoting id. Ex. 1 at 9 n.6). Plaintiff argues that his applications relate to devices "which are different from classic 'cold fusion'" and believes it is "inappropriate" to label his applications as "cold fusion" devices. Pl. Opp. [Dkt. No. 25] ¶¶ 134-36. In deference to plaintiff's belief that "cold fusion" is a loaded term, the Court will refer to these room temperature nuclear reactions as "low energy nuclear reactions" or "LENRs." Cf. Def. Mem. [Dkt. No. 18] Ex. 6 (using the term "LENR" to describe these reactions).

3

court must determine "whether those facts are sufficient as a matter of law to establish subject matter jurisdiction." Id.

Under Rule 12(b)(6), a civil action must be dismissed if the complaint does not "contain sufficient facts to state a claim that is 'plausible on its face.'" E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although the court must assume for the purposes of deciding the motion that all "well-pleaded allegations" are true and must "view the complaint in the light most favorable to the plaintiff," Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009), allegations that are merely conclusory need not be credited, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B. Analysis

1. Count 1 (35 U.S.C. § 145 Claims)

Count 1 alleges under 35 U.S.C. § 145 that plaintiff's six patent applications—the '058, '258, '381, '643, '691, and '765 applications—should be granted. Defendant argues that three of these applications are ineligible for this Court's review because the PTAB has not yet rendered a final decision on the '381 application and plaintiff is collaterally estopped from arguing for the patentability of the '058 and '765 applications. Defendant further contends that plaintiff's allegations as to the remaining three applications should be rejected because he has failed to plausibly allege that they involve patentable claims.

a. '381 Application

It is uncontested that plaintiff's appeal of the examiner's denial of the '381 application was still pending at the PTAB when he filed this action. See Def. Mem. [Dkt. No. 18] Ex. 13 ("As of [July 17, 2017], the PTAB has not issued any decision in Appeal No. 2017-006193."). A

patent applicant may only bring a suit under 35 U.S.C. § 145 if he is "dissatisfied with the decision of the Patent Trial and Appeal Board in an appeal under" 35 U.S.C. § 134(a). Section 145 waives the federal government's sovereign immunity only when the PTAB has issued a final decision on the patent application at issue. See Fleming v. Coward, 534 F. App'x 947, 950 (Fed. Cir. 2013). Therefore, because the PTAB has not issued a final decision on the '381 patent application, defendant retains its sovereign immunity and plaintiff's suit must be dismissed with respect to that application. See id.

In response to this argument, plaintiff does not claim that the PTAB has issued a final decision on his application; instead, he appears to claim that the PTAB's "refusal to admit Evidence and Briefs" into the record during the appeal "were final decisions." Pl. Opp. [Dkt. No. 25] ¶ 112. To the contrary, these decisions are the antitheses of final decisions; they are, indeed, only intermediate decisions preceding a future final decision on the patentability of the claims in the '381 application. As such, Count 1 will be dismissed as to the '381 application.[3]

### b. '058 and '765 Applications

Under the doctrine of collateral estoppel, a party may not relitigate an issue that is (1) identical to an issue (2) actually litigated in an earlier proceeding if (3) resolution of the issue was necessary to the judgment in the earlier proceeding and (4) the party had a full and fair opportunity to litigate the issue in the earlier proceeding. Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1366 (Fed. Cir. 2000). Defendant argues that two of plaintiff's patent applications (the '058 application and the '765 application) are "substantively identical" to two earlier applications (Application Nos. 08/406,457 and 07/760,970) that plaintiff submitted to the

---

[3] A dismissal for failure to exhaust would typically be without prejudice; however, the reasons the Complaint fails to plausibly allege patentability with respect to plaintiff's '258, '643, and '691 applications, see infra, apply with equal force to his '381 application. As such, this dismissal will be with prejudice.

5

USPTO. Def. Mem. [Dkt. No. 18] 9-13. The USPTO rejected both of the earlier applications for lack of utility under 35 U.S.C. § 101 and for lack of enablement under 35 U.S.C. § 112. See id. Plaintiff appealed the rejection of both applications to the Federal Circuit and, in both cases, the Federal Circuit affirmed the Board's determination that the patent applications failed to satisfy §§ 101 and 112. See id.; In re Swartz, 50 F. App'x 422, 424-25 (2002) (per curiam); In re Swartz, 232 F.3d 862, 864 (2000) (per curiam).

In response, plaintiff does not contend that the claims at issue in the current applications are distinct from the claims at issue in the earlier applications; instead, he argues that "collateral estoppel is not appropriate here because here there are new materials and evidence." Pl. Opp. [Dkt. No. 25] ¶ 58. He also appears to believe that because the earlier cases proceeded under 35 U.S.C. § 141, rather than § 145, collateral estoppel should not apply. See id. Neither of these arguments is persuasive. The application of collateral estoppel does not depend on whether new evidence has been uncovered or whether the plaintiff has identified a different cause of action; instead, collateral estoppel depends on "the identity of the issues that were litigated" in the earlier suit. Ohio Willow Wood Co. v. Alps S., LLC, 735 F.3d 1333, 1342 (Fed. Cir. 2013); see also Black v. Office of Pers. Mgmt., 641 F. App'x 1007, 1009 (Fed. Cir. 2016) ("[C]ollateral estoppel appl[ies] even if new evidence exists . . . ."). Here, (1) plaintiff implicitly concedes that the '058 and '765 applications are substantively identical to earlier applications; (2) the issues whether those earlier applications were patentable under §§ 101 and 112 were previously litigated in the Federal Circuit; (3) the Federal Circuit expressly decided the §§ 101 and 112 issues as the basis for affirming the USPTO's decision; and (4) plaintiff, as a party in the earlier litigation, had a full and fair opportunity to litigate those issues. As such, plaintiff is collaterally

6

estopped from relitigating the patentability of the '058 and '765 patent applications and Count 1 will be dismissed with respect to those two applications.

c. '258, '643, and '691 Applications

Under § 145, an applicant who is dissatisfied with the PTAB's decision affirming the rejection of his patent application may file a civil action against the Director of the USPTO in district court. Section 145 instructs the court to determine whether the applicant is "entitled to receive a patent for his invention" and, if the court determines the applicant is so entitled, to "authorize the Director to issue such patent." See id. Furthermore, the district court's review is not limited to the record before the PTAB; instead, the applicant may present additional evidence to the court and, when new evidence is introduced, review is de novo. Kappos v. Hyatt, 132 S. Ct. 1690, 1693-94 (2012).

To establish entitlement to a patent, an applicant must show (among other things) that his claimed invention is "useful," 35 U.S.C. § 101, and that the specification is "full, clear, concise, and exact" enough to "enable any person skilled in the art to which it pertains" to "make and use" it, id. § 112(a). In this case, the PTAB rejected all three applications for lack of utility and lack of enablement. See Def. Mem. [Dkt. No. 18] Ex. 1 at 28; Ex. 2 at 27; Ex. 3 at 25-26.[4] In all three appeals, the PTAB resolved both issues on the "single question of operability of the claimed invention." See, e.g., id. Ex. 2 at 13. Because the PTAB found that all three inventions were inoperable, it also found that they were not useful and could not be made and used by

---

[4] The Court may refer to documents referenced in or integral to the complaint without converting defendant's motion to dismiss into a motion for summary judgment. See Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335 (E.D. Va. 2005), aff'd, 193 F. App'x 248 (4th Cir. 2006). In this case, the Complaint explicitly incorporates the full record of each patent application at issue and refers to a variety of academic literature relating to LENR technology. See Compl. [Dkt. No. 1] ¶¶ 18, 61-69. These items have been incorporated by reference and may be properly considered in evaluating defendant's Motion to Dismiss and plaintiff's objections to that motion.

persons skilled in the relevant art. See id. Ex. 1 at 28; Ex. 2 at 27; Ex. 3 at 25-26; see also Process Control Corp. v. HydReclaim Corp., 190 F.3d 1350, 1358 (Fed. Cir. 1999) ("If a patent claim fails to meet the utility requirement because it is not . . . operative, then it also fails to meet the how-to-use aspect of the enablement requirement."). In this litigation, defendant claims that the § 145 claims should be dismissed on the same basis. See Def. Mem. [Dkt. No. 18] 14 ("Specifically, [plaintiff] fails to plausibly allege that his cold fusion inventions are operable.").

In addition, because plaintiff has included evidence on the issue of operability that allegedly goes beyond the evidence submitted to the PTAB, see, e.g., Pl. Opp. [Dkt. No. 25] Ex. 24 ("Oscillating Excess Power Gain and Magnetic Domains in NANOR-type CF/LANR Components"), plaintiff is entitled to de novo review on the issue of operability. As such, to survive defendant's Motion to Dismiss, plaintiff must allege facts sufficient to make out a plausible claim that his inventions are operable.

Both the USPTO and the Federal Circuit have long believed that LENR technology is presently inoperable. See, e.g., In re Swartz, 232 F.3d at 864 (discussing the "substantial evidence" that claimed LENR results are "irreproducible" and that "those skilled in the art would 'reasonably doubt' the asserted utility and operability" of LENR technology); see also Eli Lilly & Co. v. Actavis Elizabeth LLC, 435 F. App'x 917, 924 (Fed. Cir. 2011) (referencing LENR technology as an example of something "so incredible" as to warrant "special procedures" at the USPTO); Def. Mem. [Dkt. No. 18] Ex. 1 at 18 ("[V]irtually none of the scientific community consider[s] the alleged positive results of cold fusion experiments as being confirmed . . . ." (internal quotation marks omitted) (second alteration in original)).

8

In response, plaintiff argues: (1) that his patent applications are not directed to LENR technology, see, e.g., Compl. [Dkt. No. 1] ¶¶ 24-25, 109-11, 203-04;[5] and (2) that he has submitted evidence showing both that LENR technology is becoming more widely accepted and also that he has produced positive experimental results, see, e.g., id. ¶¶ 61-69; Pl. Opp. [Dkt. No. 25] Ex. 24 ("Oscillating Excess Power Gain and Magnetic Domains in NANOR-type CF/LANR Components").

Setting aside the apparent incompatibility of these two responses, neither is persuasive. First, as the PTAB decisions in this case explain, all of plaintiff's applications relate to the room-temperature nuclear reactions that are the hallmark of LENR technology. See Def. Mem. [Dkt. No. 18] Ex. 1 at 20 ("[T]he claims, including, in particular, representative claim 1, are directed to a process for controlling the production of a cold fusion product."); Ex. 2 at 11 (establishing "on the record before us that representative independent claim 12 is drawn to a cold fusion process, and more particularly a machine for monitoring electrochemically-induced nuclear fusion reactions in a cold fusion reactor"); Ex. 5 at 15 ("[Plaintiff's] claimed invention is drawn to methods for controlling a cold fusion reaction or cold fusion product output."). Moreover, although plaintiff asserts in his Complaint that his technology is not directed to LENR, nowhere does he substantively respond to the PTAB's characterization of his applications as directed to these low-energy nuclear processes.

Second, neither the evidence plaintiff submits relating to LENR in general nor his evidence of experiments and demonstrations he has run establishes the operability of LENR or of

---

[5] It is not entirely clear from plaintiff's Complaint whether his argument is that his patent applications are not at all directed to LENR technology or that the patent examiner and the PTAB inappropriately referred to his LENR technology as "cold fusion." For the purposes of the present motion, the Court will construe plaintiff's argument as the former, more forceful, argument.

9

the claims in plaintiff's applications. Plaintiff's general LENR evidence consists of various government reports discussing LENR technology. Unhelpfully to plaintiff, these reports make clear that LENR technology is not currently operable. See, e.g., id. Ex. 6 at 1, 6 (explaining that "much skepticism remains" about LENR and describing "real and controllable" LENR experiments in only hypothetical terms); Ex. 7 at 26 (explaining that LENR experiments "remain only thinly reproducible" and that "it seems unlikely that deployable/usable devices could be expected within a five to ten year horizon").[6] Although these reports may help plaintiff plausibly allege the scientific possibility of future LENR technology, they do not help him plausibly allege the current operability necessary to show patentability. Cf. In re Fisher, 421 F.3d 1365, 1371 (Fed. Cir. 2005) ("[A]n application must show that an invention is useful to the public as disclosed in its current form, not that it may prove useful at some future date after further research."). Moreover, nowhere does plaintiff explain how his specific patent applications relate to the processes described in these reports.

In support of his opposition to defendant's Motion to Dismiss, plaintiff has submitted a variety of academic papers and declarations explaining (allegedly successful) experiments and demonstrations that he has done. See, e.g., Smith Decl. [Dkt. No. 3] ¶¶ 3-5; Pl. Opp. [Dkt. No. 25] Ex. 24 ("Oscillating Excess Power Gain and Magnetic Domains in NANOR-type CF/LANR Components"). Again, plaintiff fails to draw any clear connection between his patent

---

[6] Plaintiff discusses both of these reports—one from the Defense Intelligence Agency ("DIA") and one from the Defense Threat Reduction Agency ("DTRA")—in his Complaint. See Compl. [Dkt. No. 1] ¶¶ 61-69. Although plaintiff appears to claim that he attached both reports to his Complaint, see id. ¶ 61 ("Exhibit 11 is from the DIA Report . . . ."); id. ¶ 65 ("A closeup of the DTRA report is shown in Exhibit 12."), neither report was filed with the court. Defendant included copies of both reports with his Motion to Dismiss. See Def. Mem. [Dkt. No. 18] Ex. 6; Ex. 7. Because both documents were extensively discussed in the Complaint, they have been incorporated by reference and may be properly considered in evaluating defendant's Motion to Dismiss and plaintiff's objections to that motion. See Davis, 395 F. Supp. 2d 331.

applications and the evidence presented—nowhere, for example, does he explain how an invention described in any of the relevant patent applications was used in the course of any of the referenced demonstrations or experiments. Therefore, although plaintiff may plausibly allege both the theoretic potential of LENR technology and also that he has achieved some positive experimental results (presumably related to the LENR field), he has not plausibly alleged that the inventions claimed in his patent applications were involved in those experiments or that those inventions have any current operability.

Because plaintiff has failed to plausibly allege that his patent applications describe operable inventions, he has failed to plausibly allege his entitlement to a patent and his § 145 claims must be dismissed with respect to the remaining—'258, '643, and '691—applications.

2. Counts 2 and 8 (Constitutional Claims)

In Counts 2 and 8, the Complaint alleges violations of plaintiff's constitutional due process and equal protection rights.[7] In both counts, plaintiff appears to be requesting damages rather than injunctive relief, see Compl. [Dkt. No. 1] ¶ 322 ("Defendants . . . are hereby sued for monetary damages."); id. ¶ 341 (citing 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)); however, plaintiff has only sued Joseph Matal, the acting Director of the USPTO, in his official capacity. Further, neither § 1983

---

[7] In both Counts, plaintiff appears to rest his constitutional arguments on the Fourteenth Amendment. See Compl. [Dkt. No. 1] ¶ 322 ("The Defendants have ignored and rejected controlling Authorities including the 14th Amendment of the Constitution of the United States . . . ."); id. ¶ 341 ("The Defendants have ignored and reject controlling Authorities including the 14th Amendment's 'equal protection' clause . . . ."). The Fourteenth Amendment is not binding on the federal government. See U.S. Const. amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (emphasis added)). Because the Court must construe plaintiff's pro se Complaint liberally, see, e.g., Haines v. Kerner, 404 U.S. 519, 520-21 (1972), both Counts will be considered to assert claims under the Fifth Amendment, which does apply to the federal government, see U.S. Const. amend. V; Bolling v. Sharpe, 347 U.S. 497 (1954).

11

nor Bivens allows a plaintiff to bring such a suit because § 1983 only applies to state officials, see 42 U.S.C. § 1983, and Bivens actions may not be brought against federal agencies or officials in their official capacity, see Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002).[8] Moreover, in his brief [Dkt. No. 25], plaintiff does not clarify the relief he is seeking for the constitutional violations nor does he develop an argument for this Court's jurisdiction. Instead, plaintiff merely argues that his "Action is Supported by Bivens." Id. ¶ 85. Therefore, the Court lacks jurisdictions over Counts 2 and 8, which must be dismissed.

Even if plaintiff were suing the defendant in his personal capacity or were requesting only injunctive relief on his constitutional claims, his Complaint would have to be dismissed for failing to state a claim upon which relief could be granted. In both Count 2 and Count 8, plaintiff alleges only vague violations of his constitutional rights. See Compl. [Dkt. No. 1] ¶ 321 (claiming that the evidence plaintiff submitted to the PTO was "all ignored by Defendants"); id. ¶¶ 342-43 (claiming that "[d]efendants' unlawful dual-tiered system, rather than a single uniform approach, rejecting the reasoning of the Supreme Court's decision in United States v. Nixon (1974) [sic] that all are 'equal under the law'" and that the "equal protection clause has been broken by the fact that individual applicants in other states have their evidence docketed, addressed, and properly delivered to supervising authorities"). Without additional factual allegations explaining, for example, what plaintiff means by "[d]efendant's unlawful dual-tiered system"; how plaintiff was treated unequally from others; or what liberty or property interest plaintiff has been denied, his Complaint does not state a plausible claim for relief. Therefore, Counts 2 and 8 will be dismissed.

---

[8] Although defendant only explicitly argues this point with respect to Count 8 (plaintiff's equal protection claim), see Def. Mem. [Dkt. No. 18] 22-23, it applies equally forcefully to Count 2 (plaintiff's due process claim).

### 3. Count 3 (Negligence Claim)

In Count 3, plaintiff contends that defendant was "negligent" in "maintain[ing] the [e]videntiary record." Under the Federal Tort Claims Act ("FTCA"), which operates as a "limited congressional waiver of sovereign immunity for injury or loss caused by the negligent or wrongful act of a Government employee acting within the scope of his or her employment," Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001), negligence actions cannot be brought in federal court "unless the claimant shall have first presented the claim to the appropriate Federal agency," 28 U.S.C. § 2675(a); see also McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").[9]

Plaintiff does not dispute that he failed to appropriately file an administrative claim with the USPTO, see Def. Mem. [Dkt. No. 18] Ex. 12, instead arguing that (1) he "has submitted Petitions (pursuant to the Board of Patent Appeals) seventeen times in the last two years"; (2) "the FTCA is only for federal employees" and does not apply to "independent contractors"; and (3) "in this case, foreign governments may be involved," Pl. Opp. [Dkt. No. 25] ¶¶ 76-79, 103-11. None of these responses is compelling. To satisfy the FTCA's administrative exhaustion requirement, claims against the USPTO must be filed with the USPTO Office of General Counsel, not merely discussed in a petition submitted to the PTAB. See 37 C.F.R. § 104.41. Moreover, plaintiff's claims about independent contractors and foreign governments are nonsensical, as he has sued only the Director of the USPTO. Because he failed to exhaust the

---

[9] In his brief [Dkt. No. 25], plaintiff appears to claim that his third count is "Supported by Bivens . . . which is outside the purview of the Federal Tort Claims Act," id. ¶ 85. To the extent Count 3 is grounded on constitutional rather than tort law, it must be dismissed because, as explained above, Bivens actions cannot be brought against federal agencies or federal officials in their official capacity.

required administrative procedures, Count 3 will be dismissed without prejudice to plaintiff's ability to refile this claim if he properly exhausts the administrative requirements. See Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986) ("It is well-settled that the requirement of filing an administrative claim is jurisdictional . . . .").

4. Count 4 (Denial of Records Claim)

In Count 4, the Complaint alleges that defendant violated 37 C.F.R. § 41.109, which provides a right to access certain USPTO records in some proceedings before the PTAB. See 37 C.F.R. § 41.109(a) ("Any request from a party for access to or copies of Office records directly related to a contested case must be filed with the Board."). On its face, this provision provides no private right of action and does not grant jurisdiction to this Court to hear an action arising from violations of the regulation. Moreover, plaintiff provides no analysis in either his Complaint [Dkt. No. 1] or his brief [Dkt. No. 25] explaining the source of any right to sue under the regulation. Therefore, Count 4 will be dismissed for lack of jurisdiction.[10]

5. Counts 5-7, 9-12, and 14 (Criminal Claims)

Counts 5-7, 9-12, and 14 allege that the defendant has committed a variety of crimes, including obstruction of justice, Compl. [Dkt. No. 1] ¶¶ 327-28 (Count 5) (claiming violations of 18 U.S.C. §§ 1503, 1519); making false statements, id. ¶¶ 329-30 (Count 6) (claiming violations of 18 U.S.C. § 1001); conspiracy to commit an offense against or to defraud the United States,

---

[10] Even if the Court did have jurisdiction over this Count, plaintiff has failed to plead sufficiently specific allegations to withstand dismissal under Rule 12(b)(6). He claims only that "[t]he PTO, and the Board, have ignored specific requests which would have clarified this for the Honorable court." Compl. [Dkt. No. 1] ¶ 326. He does not explain when he filed those requests, which records he was requesting, how his requests fell under § 41.109, or what those requests would have "clarified." In addition, § 41.109 applies only to a "contested case," 37 C.F.R. § 41.109; however, appeals like plaintiff's proceed under 35 U.S.C. § 134 and are not "contested cases," see 37 C.F.R. § 41.2 ("Contested case means a Board proceeding other than an appeal under 35 U.S.C. 134 or a petition under § 41.3"). Therefore, even on the merits of the claim, plaintiff has failed to plausibly allege any entitlement to relief.

14

id. ¶¶ 331-40 (Count 7) and 359-60 (Count 14) (claiming violations of 18 U.S.C. § 371); mail fraud, id. ¶¶ 344-46 (Count 9) (claiming violations of 18 U.S.C. § 1341); witness tampering, id. ¶¶ 347-54 (Counts 10 and 11) (claiming violations of 18 U.S.C. § 1512);[11] and misprision of a felony, id. ¶¶ 355-56 (Count 12) (claiming violations of 18 U.S.C. § 4). None of the specified criminal statutes contains a waiver of sovereign immunity and plaintiff does not claim that the federal government has in fact waived its immunity with respect to these criminal claims. As such, because plaintiff has only sued the Director of the USPTO in his official capacity, sovereign immunity bars plaintiff from bringing these counts, see Fed. Deposit Ins. Co. v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). For these reasons, Counts 5-7, 9-12, and 14 will be dismissed.

6. Count 13 (Civil RICO Claim)

Count 13 alleges that defendant has violated RICO. As with the criminal statutes identified in plaintiff's other counts, RICO does not contain a waiver of sovereign immunity. See Bloch v. Exec. Office of the President, 164 F. Supp. 3d 841, 856 (E.D. Va. 2016). In addition, plaintiff does not allege—in either his Complaint [Dkt. No. 1] or his brief [Dkt. No. 25]—that the federal government has waived sovereign immunity with respect to being sued under RICO. As such, plaintiff cannot bring a RICO claim against the Director of the USPTO in his official capacity and Count 13 must be dismissed.

---

[11] In Count 11, plaintiff claims defendant has violated 18 U.S.C. § 1512 (a witness tampering statute) through violations of the Administrative Procedure Act ("APA"). To the extent plaintiff is alleging criminal law violations, his claim must be dismissed. To the extent plaintiff is alleging (non-criminal) violations of the APA, his claim must also be dismissed because the APA only provides a cause of action to review agency decisions when "there is no other adequate remedy in a court." 5 U.S.C. § 704. As the present action demonstrates, 35 U.S.C. § 145 provides a cause of action to review the denial of a patent application; therefore, plaintiff cannot bring suit against the agency under the APA.

III. CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss [Dkt. Nos. 15 and 16] will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 22 day of August, 2017.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge